## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL KAUFMANN, on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>NORDIC WARE, INC.<br><br>      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Michael Kaufmann ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Nordic Ware, Inc. ("Defendant").

## NATURE OF ACTION

1.      This is a class action lawsuit on behalf of purchasers of Defendant's Nordic Ware Aluminum Bakeware (the "Products[1]") in the United States.

2.      Defendant manufactures, labels, markets and sells aluminum bakeware under its "Nordic Ware" label.  Defendant sells the Products throughout the United States, including in the States of New York and Minnesota.

3.      Defendant markets and sells the Products as products that are "made in the USA," "made in America," or "American made" (collectively the "USA Representations"), along with a prominent image of the flag of the United States of America:

---

[1]The Products include all aluminum bakeware sold by Defendant that is labeled, packaged, or marketed with claims that the products are "made in the USA," "Made in America," or "American Made."

















4.    Defendant even goes so far as to stamp the actual pans with an impression that states the Products are "Made in the USA":




5.    Defendant features the USA Representations on online listings for the products:







**About this item**

- Metal
- Made in USA
- Naturals bakeware is made of pure aluminum for superior heat conductivity and produces consistently evenly browned baked goods every time.
- These premium pans are built for lifetime durability, ensuring they will never rust, providing you with long-lasting use.
- Encapsulated galvanized steel rims stand strong against warping, preserving the shape and quality of your pans through numerous uses.
- Pan exterior dimentions 17.9 x 12.9 x 1 inches and interior 17.1 x 12.1 x 1 inches, perfect for versatile use in various recipes.
- Proudly American Made since 1946, our aluminum bakeware-quality pieces are made to withstand a lifetime of use in your home kitchen

Roll over image to zoom in



BUNDTS®  ›     BAKEWARE  ›     COOKWARE  ›     ACCESSORIES  ›     MICROWAVE  ›     SALE  ›     🔍



## Naturals® Baker's Half Sheet Pan

**$18.00**

★★★★★ 60

read reviews (62) | write a review

Voted "Best Baking Sheet," the Baker's Half Sheet is an essential tool in the kitchen you will use in many different ways. From sheet pan dinners and baked goods to food prep, our top-rated Naturals® Bakeware collection is made of pure aluminum for superior heat conductivity and produces consistently evenly browned baked goods every time. These premium pans have lifetime durability and will never rust. Encapsulated galvanized steel rims prevent warping. Creativity meets natural aluminum sustainability.

SKU: 43100

     

AMERICAN MADE
FAMILY OWNED

6.      Problematically for consumers, the USA Representations are false and misleading because all, or virtually all of the aluminum and bauxite used to make the Products is obtained outside of the United States, and all of the transformation of bauxite into alumina and the transformation of alumina into aluminum occurred in Canada.

7.      Plaintiff brings this action individually, and on behalf of all similarly situated individuals who purchased the falsely and deceptively labeled Products for violations of

Minnesota Statute §§ 325F.67, *et. seq.* and 325F.68, *et seq.*, New York General Business Law §§ 349 and 350 and fraud.

**PARTIES**

8.      Plaintiff Michael Kaufmann is a resident of New York, New York who has an intent to remain there, and is therefore a domiciliary of New York.  On November 28, 2023, Plaintiff purchased a two pack of Nordic Ware Naturals Aluminum Quarter Sheet Pans from Amazon.com for $ 21.52.  That same day, Plaintiff also purchased a two pack of Nordic Ware Natural Aluminum Commercial Baker's Half Sheet Pans from Amazon.com for $21.99.  Prior to his purchase of the Products, Plaintiff reviewed the product's labeling and packaging and saw that his Products were labeled and marketed as being "made in the USA."  In purchasing the Product, Plaintiff relied on Defendant's representations that the Products were "made in the USA." Plaintiff saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Products were "made in the USA" and that all, or virtually all, of the components in the Products were sourced from the USA.  Plaintiff relied on these representations and warranties in deciding to purchase his Products. Accordingly, those representations and warranties were part of the basis of the bargain, in that he would not have purchased his Products on the same terms had he known those representations were not true.  In making his purchase, Plaintiff paid an additional amount for the Products above what he would have paid for competing aluminum sheet pans based on the Products' "made in the USA" claim.  Had Plaintiff known that the "made in the USA" claim was false and misleading, Plaintiff would not have purchased the Products, or would have paid substantially less for the Products.

9.      Defendant Nordic Ware, Inc. is a Minnesota corporation with its principal place of business at 5005 County Road 25, St. Louis Park, Minnesota 55416.  Defendant markets,

sells, and distributes the Products throughout the United States, including in the State of New York.  Defendant marketed and sold the Products during the class period.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant

11.     This Court has personal jurisdiction over Defendant pursuant to 18 U.S.C. §§ 1965(b) and (d) because Defendant maintains its principal place of business in, and is thus a resident of, this State, maintains minimum contacts with the United States and this State and intentionally avails itself of the laws of the United States and this State by conducting a substantial amount of business in Minnesota.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

**FACTUAL ALLEGATIONS**

**A.     Defendant Misrepresents the Products are "Made in the USA"**

13.     Defendant falsely and misleadingly labels its Products, as depicted above (*supra* ¶¶ 3-5) and below, as being "made in the USA."







14.     The USA Representations on the Products' packaging, labeling, and marketing are conspicuous and designed to grab the consumer's attention.  The Products prominently make the USA Representations on the front label, packaging, and on the physical products.

15.     In this way, Defendant's carefully designed its labels, packaging, and products, including the placement of the USA representation, perpetuate the false notion that the Products are in fact "made in the USA."  Defendant intends that consumers viewing the Products will read the claim, understand the claim, and rely on the claim.

**B.     "Made in USA" Labeling**

16.     Traditionally, the Federal Trade Commission ("FTC") has required that products marketed and advertised as "Made in the USA" be "all or virtually all" made in the United States.

17.     In 1996, the FTC published its Enforcement Policy Statement on U.S. Origin Claims to guide marketers that wanted to make an unqualified "Made in the USA" claim under the "all or virtually all" standard as well as those who wanted to make a qualified "Made in the USA claim."

18.     In 2021, the FTC formally enacted the rule on Made in USA Labeling (the "Labeling Rule").  Under 16 C.F.R. § 323, "Made in the United States" means:

any representation, express or implied, that a product or service, or a specified component thereof, is of U.S. origin, including, but not limited to, a representation that such product or service is "made," "manufactured," "built," "produced," "created," or "crafted" in the United States or in America, or any other unqualified U.S.-origin claim.

16 C.F.R. § 323(a).

19.     Per the FTC, examples of express "Made in USA" claims include, but are not limited to, "Made in USA," "Our products are American-made," "USA," "Manufactured in USA," or "Built in USA."

20.     Examples of implied claims include, but are not limited to, US. Symbols or geographic references like U.S. flags, U.S. maps, or references to U.S. locations of headquarters or factories.

21.     The Labeling Rule codified the "all or virtually all" standard for "Made in USA" claims on products:

it is an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2.

22.     The FTC has also clarified that "all or virtually all" means that the product should contain no – or negligible – foreign content.

23.     The FTC has gone on to give examples of deceptive conduct arising from the foreign content in products with "Made in USA" claims, including but not limited to the following:

**Example 1:** A company produces watches at a plant in Nevada using mostly U.S. parts and labor. All watches include movements,

which are the parts that allow the watch to keep time. The company uses inexpensive Swiss movements in its watches. Movements account for a small proportion of the costs to make the company's watches, but without the movements, the watches can't tell time. Because movements are essential to the watches' function, an unqualified Made in USA claim is likely deceptive.

**Example 2:** A table lamp is assembled in the U.S. from American-made brass, an American-made Tiffany-style lampshade, and an imported base. The base accounts for a small percent of the total cost of making the lamp. An unqualified Made in USA claim is deceptive for two reasons: The base is not far enough removed in the manufacturing process from the finished product to be of little consequence and it's a significant part of the final product.

24.     Raw materials and components are also included in the "all or virtually all"

analysis.  The FTC has provided the following example to guide marketers:

**Example 3**: If the gold in a gold ring is imported, an unqualified Made in USA claim for the ring is deceptive. That's because of the significant value the gold is likely to represent relative to the finished product, and because the gold — an integral component — is only one step back from the finished article. By contrast, consider the plastic in the plastic case of a clock radio otherwise made in the U.S. of U.S.-made components. If the plastic case was made from imported petroleum, a Made in USA claim is likely to be appropriate because the petroleum is far enough removed from the finished product, and is an insignificant part of it as well.

## C.     Reasonable Consumers are Misled by the USA Representations

25.     The USA Representations lead reasonable consumers, like Plaintiff, into believing

the Products are "made in the USA."  More, specifically, reasonable consumers interpret the

USA Representations to mean that all parts of a product, including any natural resources it

contains, originated in the United States.

26.     The USA Representations are material to consumers.  Indeed, in 2020 when the

FTC conducted a workshop and called for public comment on Made in the USA labeling, one

comment noted that Consumer Reports testing found that 80% of consumers prefer to buy

American products.  Similarly, another comment reported that 2018 testing found that 92% of survey respondents had a favorable view of manufactured goods in America.

27.    Moreover, Defendant's CEO, David Dalquist has admitted that consumers will pay a "premium for U.S.-made products" and that Defendant has found that consumers are willing to pay approximately a 10 percent premium for an American-made product versus an import.

28.    Similarly, Mr. Dalquist has admitted that Nordic Ware "cater[s] to the people that appreciate American-made products[,]" and "[t]hat's who buys Nordic Ware."

29.    But Nordic Ware's USA Representations are false.  Indeed, Mr. Dalquist has admitted the primary component used to manufacture the Products is aluminum sourced in the form of 5,000 pound coils imported from Canada.  Further, in or around March of 2025 following a surge in litigation relating to Made in USA labeling, Defendant began to revise its labeling and marketing.  The new labeling and marketing features a qualified claim stating that the Products are "made in America with domestic and imported materials", as shown below:



### Naturals® Baker's Half Sheet Pan Set of 2

$29.99

★★★★★ 56
read reviews (57) | write a review

Our top-rated Naturals® Bakeware collection is made of pure aluminum for superior heat conductivity and produces consistently evenly browned baked goods every time. These premium pans have lifetime durability and will never rust. Encapsulated galvanized steel rims prevent warping. Creativity meets natural aluminum sustainability. Voted "Best Baking Sheet," the Baker's Half Sheet is an essential tool in the kitchen you will use in many different ways, from sheet pan dinners to baked goods to food prep. The set includes two half sheets!

SKU: 43180



MADE IN AMERICA
WITH DOMESTIC AND
IMPORTED MATERIALS

11

30.     That the aluminum is sourced internationally is no surprise because the raw material for aluminum is bauxite, the only commercial ore of aluminum.

31.     The largest suppliers of bauxite for aluminum include Australia, Guinee, India, Brazil, and Jamaica.

32.     In contrast, none of the bauxite mined in the U.S. has been used for aluminum since approximately 1981.

33.     Indeed, in 2023, only a limited amount of bauxite was produced for non-metallurgical use in Alabama, Arkansas, and Georgia.  U.S.-mined bauxite is used for abrasives, high-temperature refractory materials, and as a high-strength proppant for hydraulic fracturing of oils and gas wells.

34.     Moreover, the Atlantic Alumina Company LLC ("Atalco") owns the last operating alumina refinery in the United States.  While the refinery is located in Gramercy, Louisiana, the bauxite it refines is mined from Atalco mines located in Jamaica.

35.     Given the foregoing, it is virtually impossible to source U.S.-mined bauxite and U.S.-made aluminum in the United States.  As such, the aluminum used in Defendant's products necessarily must be sourced from foreign nations.  Canada is a logical source because it is the world's fourth-largest primary aluminum producer, following China, India, and Russia.  Bauxite is not mined domestically in Canada, and Canadian refineries rely on imported bauxite to support their aluminum production.  Moreover, Canadian aluminum is easily accessible to Defendant because Canada and Minnesota share a border.  As a result, Canadian aluminum would have lower transportation time and costs.

36.     Without aluminum (and bauxite) sourced from outside the United States, Defendant would not be able to manufacturer its Products, all of which are aluminum based.

12

First, as described above, all – or virtually all – of the bauxite ore used to create aluminum is sourced from outside of the United States.  Second, Defendant has admitted that its aluminum is sourced from Canada, meaning that all, or virtually all, of the aluminum in the products is sourced from outside the United States, rendering the USA Representations false and misleading.

## CLASS ALLEGATIONS

37.    **Class Definition**.  Plaintiff seeks to represent a class defined as all persons in the United States who purchased the Products within the applicable statute of limitations through the date Defendant implemented the qualified USA Representations (the "Class").  Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators, and anyone who purchased the Products for resale.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38.    **Subclass Definition**. Plaintiff also seeks to represent a subclass consisting of Class members who purchased the Products in New York within the applicable statute of limitations through the date Defendant implemented the qualified USA Representations (the "Subclass").

39.    Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

40.    **Numerosity.**  The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are thousands of members in the Class and Subclass.  Although the precise number of Class

members is unknown to Plaintiff, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

41.    **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

      a.    whether Defendant's labeling, marketing, and promotion of the Products is false and misleading;

      b.    whether Defendant's conduct was unfair and/or deceptive; and

      c.    whether Plaintiff and the Class have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

42.    With respect to the Subclass, additional question of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated GBL §§ 349 and 350.

43.    **Typicality**. The claims of the named Plaintiff are typical of the claims of other members of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased the Products, and suffered a loss as a result of that purchase.

44.    **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on

behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

45.    **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Minnesota Prevention of**
**Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq*.)**
**(On behalf of the Class)**

46.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

47.    Defendant is a citizen of the State of Minnesota.

48.    Minnesota's Private Attorney General Statute (Minn. Stat. § 8.31, subd. 3a) allows Plaintiff and the Class to bring a claim under Minn. Stat. § 325F.69.

15

49.     The Minnesota Prevention of Consumer Fraud Act prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely therein in in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby. . ." Minn. Stat. § 325F.69(1).  Defendant advertised and represented to Plaintiff and members of the Class that the Products possessed certain qualities and characteristics, including but not limited to representations that the Products were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Product takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

50.     Other states across the Country have enacted substantially similar consumer protection statutes which require the same or similar showings of proof, and which prevent the unlawful conduct described herein. .[2]

51.     Defendant's made advertisements and representations to Plaintiff and the Class that the Products were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the

---

[2] *See* Alaska Stat. § 45.50.471, *et seq.*, Ark. Code § 4-88-101, *et seq.*, Colo. Rev. Stat. § 6-1-105, *et seq.*, Conn. Gen. Stat. § 42-110b, *et seq.*, 6 Del. Code § 2511, *et seq.*, D.C. Code § 28-3901, *et seq.*, Fla. Stat. § 501.201, *et seq.*, Ga. Code Ann. § 10-1-393, *et seq.* and Ga. Code Ann. § 10-1-370 *et seq.*, Haw. Rev. Stat. § 480, *et seq.*, Idaho Code § 48-601, *et seq.*, 815 ILCS § 505/1, *et seq.*, Kan. Stat. § 50-623, *et seq.*, Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*, M.G.L. c. 93A, *et seq.*, Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*, Md. Com. Law Code § 13-101, *et seq.*, Mich. Stat. § 445.901, *et seq.*, Missouri Stat. § 407.010, *et seq.*, Neb. Rev. Stat. §§ 59-1601, *et seq.*, Nev. Rev. Stat. § 598.0903, *et seq.*, N.H. Rev. Stat. § 358-A:1, *et seq.*, N.J. Rev. Stat. § 56:8-1, *et seq.*, N.M. Stat. § 57-12-1, *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.*, N.D. Cent. Code § 51-15-01, *et seq.*, Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*, Or. Rev. Stat. § 646.605, *et seq.*, R.I. Gen. Laws. § 6-13.1-1, *et seq.*, S.C. Code Laws § 39-5-10, *et seq.*, S.D. Code Laws § 37-24-1, *et seq.*, Tex. Bus. & Com. Code § 17.45, *et seq.*, 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*, Wash. Rev. Code. § 19.86.010, *et seq.*, W. Va. Code § 46A-6-101, *et seq.*, Wis. Stat. Ann. § 100.18, *et seq.*

making, manufacturing, and or production of the aluminum in the Product takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

52.     Defendant states that the Products purchased are "made in the USA."

53.     Defendant intended for Plaintiff and the Class to rely upon, and accept as true, the representations and omissions with respect to the USA Representations.

54.     Defendant's representations and omissions with respect to USA Representations were made in connection with the sale of the Products to Plaintiff and the Class

55.     Defendant intentionally and/or knowingly misrepresented that the Products were "made in the USA" to Plaintiff and the Class.

56.     Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers that the Products were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Product takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

57.     Plaintiff and the Class relied upon, and were in fact deceived by, Defendant's USA Representations in deciding to purchase the Products over similar products offered by competitors.

58.     Plaintiff and the Class were injured in fact and suffered actual damages as a result of their reliance on Defendant's representations and omissions with respect to the USA Representations.  Defendant's wrongful conduct was the direct and proximate cause of the injuries

to Plaintiff and the Class. Because of Defendant's fraudulent conduct, the value of the Products has been greatly diminished.

59.     Had Plaintiff and the Class been aware the USA Representations were false, Plaintiff and the Class would have either paid less for their Products or would not have purchased them at all. Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

60.     Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

**COUNT II**
**False Advertising**
**(Minn. Stat. § 325F.67, *et seq*.)**
**(On behalf of the Class)**

61.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

62.     Minnesota's False Statement in Advertising Act ("FSAA"), Minn. Stat. § 325F.67, provides a cause of action to "any person, firm, corporation, or association" who purchases goods or services through advertising which "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Consumer protection laws of other states make similar conduct unlawful.

63.     Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's Private-Attorney General Statute, Minn. Stat. § 8.31, subd. 3a, allows individuals who have been injured through a violation of the FSAA to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorney's fees.

64.    By engaging in the conduct herein, Defendant violated and continue to violate Minn. Stat. § 325F.67 and the similar laws of other states.

65.    Defendant's misrepresentations, knowing omissions, and use of other sharp business practices include, by way of example:

      a.    Defendant's fraudulent, misleading, and deceptive statements relating to the true quality and characteristics of the Products;

      b.    Defendant's fraud and misrepresentations by omission with respect to information about the USA Representation and Defendant's knowledge of the falsity of those representations;

      c.    Defendant's concealment of the true nature of the Products and the origin of the Products' components; and

      d.    Defendant's omission that the Products were not  "made in the USA," because all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Product takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

66.    As a result of Defendant's conduct, Plaintiff and those similarly situated have suffered actual damages in that they have purchased Products that were deceptively sold as "made in the USA" and worth less than the price they paid.  There is an association between Defendant's acts and omissions as alleged herein and the damages suffered by Plaintiff and those similarly situated.

67.    As a result of Defendant's untrue, deceptive, and misleading assertions and representations about the Products, Plaintiff and the Class have suffer damages because theywould have either paid less for their Products or would not have purchased them at all had they known the Products were not "made in the USA."  Plaintiff and the Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

68.    Defendant has similarly violated the consumer-protection statutes of the various states.

69.    Pursuant to Minn. Stat. § 8.31, subd. 3a, Plaintiff and the Class seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota Prevention of Consumer Fraud Act.

## COUNT III
### Violation of New York's Gen. Bus. Law § 349
### (On Behalf of the Subclass)

70.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

71.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

72.    Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the place of origin of the Products to mislead consumers into believing the Products are "made in the USA."

73.    Plaintiff has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased the Products for his own personal use.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representation that the Products were "made in the USA."  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

74.    Defendant's deceptive acts and practices were directed at consumers.

75.    Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase the Products and/or pay more for them under the false – but reasonable – belief that the Products

were "made in the USA," when in fact all or virtually all of the bauxite and aluminum used to make the Products is obtained outside of the United States, and all of the making, manufacturing, and or production of the aluminum in the Product takes place outside of the United States, including all of the transformation of bauxite into alumina and the transformation of alumina into aluminum.

76.     By advertising so prominently that the Products were "made in the USA," Defendant proves that information about the place of origin for the Products is material to consumers.  If such information was not material, Defendant would not feature it prominently in the marketing, labeling, and advertising of the Products.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Products to unsuspecting consumers across New York.  If Defendant has advertised its Products truthfully and in a non-misleading fashion, Plaintiff and other members of the Subclass would not have purchased them or would not have paid as much as they did for them.

77.     As a direct and proximate result of Defendant's false, misleading, and deceptive misrepresentations and/or omissions, Plaintiff and members of the Subclass were injured in that they: (1) paid money for Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein.  Plaintiff and Class and Subclass Members would not have purchased the Products or would not have paid as much as they did for them.

## COUNT IV
### Violation of New York's Gen. Bus. Law § 350
### (On Behalf of the Subclass)

78.    Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

79.    Plaintiff brings this claim individually and on behalf of the members of the proposed Subclass against Defendant.

80.    Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by misrepresenting the qualities and characteristics of the Product.

81.    On behalf of himself and other members of the Subclass, Plaintiff seeks to recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

82.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

83.    These misrepresentations have resulted in consumer injury or harm to the public interest.

84.    As a result of Defendant's misrepresentations, Plaintiff and members of the Subclass have suffered economic injury because they would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products were not "made in the USA."

85.    On behalf of himself and other members of the Subclass, Plaintiff seeks to recover his actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorney's fees.

## COUNT V
## Fraud
### (On Behalf of the Class and Subclass)

86.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

87.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendant.

88.     As discussed above, Defendant provided Plaintiff and Class and Subclass members with false or misleading material information about the Products, including but not limited to the fact that the Products were "made in the USA."

89.     These misrepresentations were made with knowledge of their falsehood.

90.     The misrepresentations made by Defendant, upon which Plaintiff and Class and Subclass members reasonably and justifiably relied, were intended to induce, and actually induced Plaintiff and Class and Subclass members to purchase the Product.

91.     The fraudulent actions of Defendant caused damage to Plaintiff and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendant as follows:

a.     Certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Subclass, and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

b.     Declaring that Defendant's conduct violates the statutes referenced herein;

c.     Finding in favor of Plaintiff, the Class, and the Subclass against Defendant on all counts asserted herein;

23

d.      Awarding Plaintiff and Class and Subclass members their costs and expenses incurred in the action, including reasonable attorneys' fees;

e.      For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

f.      Ordering Defendant to pay pre-judgment interest on all amounts awarded; and

g.      Providing such further relief as may be just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 28(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: April 11, 2025                    Respectfully  submitted,

*/s/ Robert K. Shelquist*
Robert K. Shelquist (MN 21310X)
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
E-Mail: rkshelquist@locklaw.com

**SMITH KRIVOSHEY, PC**
Brittany S. Scott (*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: 888-410-0415
E-Mail: brittany@skclassactions.com

*Attorneys for Plaintiff*