UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael Kaufmann and Debbie Thayer, *on behalf of themselves and others similarly situated*,

                    Plaintiffs,

v.

Nordic Ware, Inc.,

                    Defendant.

File No. 25-cv-1379 (ECT/DLM)

**OPINION AND ORDER**

---

Brittany Scott, Smith Krivoshey, PC, San Francisco, CA; Joel Dashiell Smith, Smith Krivoshey, PC, Boston, MA; and Robert K. Shelquist, Cuneo Gilbert & LaDuca, LLP, St. Louis Park, MN, for Plaintiffs Michael Kaufmann and Debbie Thayer.

Michelle Rognlien Gilboe, Emily Suhr, and Bethany Jewison, Lewis Brisbois Bisgaard & Smith LLP, Minneapolis, MN, for Defendant Nordic Ware, Inc.

---

Plaintiffs, a New York and California citizen, allege that Nordic Ware's use of "Made in the USA" labels on their aluminum bakeware is deceptive because the raw material for aluminum—bauxite—is mined overseas. On behalf of themselves, and on behalf of a proposed nationwide class and subclasses, Plaintiffs bring claims under Minnesota, New York, and California statutes, and they bring common-law claims, though they do not identify what state law might govern the common-law claims.

Nordic Ware moved to dismiss the operative Amended Complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The motion will be denied. Plaintiffs have plausibly

alleged the Class Action Fairness Act's jurisdictional requirements, meaning there is subject-matter jurisdiction over this case. On the merits, there is no constitutional problem with out-of-state plaintiffs bringing claims under Minnesota consumer protection statutes, California's "safe harbor" doctrine does not bar the claims under California law, and Plaintiffs have otherwise alleged facts stating a plausible claim for each count they press.

I[1]

Plaintiffs Michael Kaufmann and Debbie Thayer filed a class action lawsuit against Defendant Nordic Ware, Inc. Plaintiffs seek to represent a nationwide class and subclasses of consumers who purchased Nordic Ware's aluminum bakeware ("Products"). Am. Compl. [ECF No. 19] ¶¶ 1, 10. Nordic Ware advertises and labels its products as being "made in the USA," "made in America," or "American made." *Id.* ¶ 5. These representations appear on the Products' "packaging, labeling, advertising, and marketing." *Id.* ¶ 19.

According to the Amended Complaint, "virtually all of the aluminum and bauxite used to make the Products is obtained outside of the United States, and all of the transformation of bauxite into alumina and the transformation of alumina into aluminum occurred in Canada." *Id.* ¶ 9. Bauxite is the raw material for aluminum and its "only commercial ore." *Id.* ¶ 37. It is mined mainly in Australia, Guinea, India, Brazil, and Jamaica, and American-mined bauxite has not been used to produce aluminum since about

---

[1]    In accordance with the standards governing a motion under Rule 12(b)(6), the facts are drawn entirely from the Amended Complaint. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014).

1981. *Id.* ¶¶ 38–39. Once bauxite is mined, it is transformed into alumina, which is then transformed into aluminum. *See id.* ¶ 9. Nordic Ware "has admitted that the primary component used to manufacture the Products is aluminum sourced in the form of 5,000 pound coils imported from Canada." *Id.* ¶ 34. "Aluminum alloys are normally supplied as semi-finished products in sheet, plate, coil, extrusion, tube, or wire form." *Id.* Plaintiffs conclude that the bauxite must have been mined outside America, then sent to Canada, where it was made into aluminum coils, and then shipped to America, where the coils were turned into the Products they purchased. *Id.* ¶¶ 34, 42. So in this picture, manufacture of the Products involves at least three steps: mining bauxite, transforming bauxite into aluminum coils, and transforming the coils into finished products; Plaintiffs allege the first two steps happen outside America.

Kaufmann and Thayer interpreted the representations on the Products they bought to mean "all, or virtually all, of the components in the Products were sourced from the USA." *Id.* ¶¶ 11–12. Kaufmann purchased Nordic Ware sheet pans in November 2023, having seen and reviewed the made-in-America representations in the marketing materials. *Id.* ¶ 11. He spent $43.51 on four sheet pans. *Id.* Thayer purchased a Nordic Ware bundt pan and two Nordic Ware 5-cup bundt pans in "September 202" [sic] and December 2024, also after seeing and reviewing the made-in-America representations in the marketing material. *Id.* ¶ 12. She spent $76.19 total. *Id.* Plaintiffs say that, had they known about the foreign origins of the bauxite and aluminum used to make Nordic Ware's products, they would not have purchased the Products, or would have paid substantially less for the Products. *Id.* ¶¶ 11–12. Plaintiffs further allege that Nordic Ware "has found that

consumers are willing to pay approximately a 10 percent premium for an American-made product versus an import." *Id.* ¶ 8. Using a 10% premium rate, Plaintiffs assert they paid price premiums ranging from $2.15 to $4.02 per product. *Id.* ¶¶ 11–12.

Plaintiffs seek to represent a nationwide class, a multistate breach-of-warranty subclass, a New York subclass, and a California subclass. The nationwide class is "defined as all persons in the United States who purchased Products with unqualified USA Representations within the applicable statute of limitations." *Id.* ¶ 51. The multistate breach-of-warranty subclass is defined as all

> Class members who purchased Products with unqualified USA Representations in the states of Alaska, California, Colorado, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming within the applicable statute of limitations.

*Id.* ¶ 52(a). Kaufmann seeks to represent a subclass consisting of New York purchasers of the Products with unqualified made-in-America representations within the applicable statute of limitations, *id.* ¶ 52(b), and Thayer seeks to represent a subclass of California purchasers of the Products with unqualified made-in-America representations within the applicable statute of limitations, *id.* ¶ 52(c). Kaufmann is a citizen of New York, *id.* ¶ 11, Thayer is a citizen of California, *id.* ¶ 12, and Nordic Ware is incorporated and maintains its principal place of business in Minnesota, *id.* ¶ 14.

Plaintiffs assert ten causes of action, which can be grouped in four categories: Minnesota statutes, New York statutes, California statutes, and common law. Counts I and II allege consumer fraud and false advertising under Minnesota statutes; they are brought

4

on behalf of the nationwide class. *Id.* ¶¶ 61–84.[2]  Counts III and IV, brought on behalf of the New York subclass, allege violations of New York consumer protection laws. *Id.* ¶¶ 85–100.  Counts V, VI, and VII assert violations of California's Consumer Legal Remedies Act, False Advertising Law, and Unfair Competition Act, all on behalf of the California subclass. *Id.* ¶¶ 101–35.  The remaining causes of action are common-law claims, but Plaintiffs do not identify what law applies: Count VIII is for breach of express warranty, brought on behalf of the nationwide class and the three subclasses. *Id.* ¶¶ 136–43.  Count IX is unjust enrichment, brought on behalf of the California subclass alone. *Id.* ¶¶ 144–50.  Count X is fraud, brought on behalf of the nationwide class, the New York subclass, and the California subclass, but not the multistate subclass. *Id.* ¶¶ 151–56.  Plaintiffs seek class certification, and they request damages and declaratory relief. *Id.* at 39 (following WHEREFORE clause).

## II

A court reviewing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) must first determine whether the movant is making a "facial" attack or a "factual" attack. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  Here, Nordic Ware makes a facial attack to subject-matter jurisdiction because they accept as true all the Plaintiffs' factual allegations concerning jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In analyzing a facial attack, a court "restricts itself to the

---

[2]     These statutes provide no private right of action, so plaintiffs who seek relief under them must do so through the Minnesota Private Attorney General Statute. *See Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016).  Plaintiffs have properly done so. *See* Am. Compl. ¶¶ 63, 75, 78, 84 (citing Minn. Stat. § 8.31).

face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

Plaintiffs allege there is subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"). Am. Compl. ¶ 15. "CAFA gives federal courts jurisdiction over certain class actions, defined in § 1332(d)(1), if the class has more than 100 members, the parties are minimally diverse, and the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)(2), (5)(B)). The party invoking federal jurisdiction bears the burden of proving the amount-in-controversy requirement is satisfied. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). CAFA "tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013); *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) ("A district court aggregates the claims of all named or unnamed persons who fall within the definition of the *proposed* or certified class." (citation modified)). "[W]hen determining the amount in controversy, the question 'is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'" *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009)).

Nordic Ware argues Plaintiffs have not plausibly alleged CAFA's $5 million amount-in-controversy requirement because "Plaintiffs have not plead [sic] facts to

indicate how many class members there are believed to be and therefore it is not possible to estimate an aggregation of their claims." ECF No. 25 at 31. According to Nordic Ware, Plaintiffs have included uninjured members in the putative class and subclasses, and these individuals cannot be used to determine the aggregate amount in controversy, as "only those who allege that they were injured as a result of the alleged misrepresentation may be included in the class." *Id.* (citing *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 987–88 (8th Cir. 2021)).

Plaintiffs have alleged facts plausibly showing CAFA's jurisdictional prerequisites. Recall that the putative nationwide class is "all persons in the United States who purchased Products with unqualified USA Representations within the applicable statute of limitations." Am. Compl. ¶ 51. The Products—Nordic Ware's aluminum bakeware—are all marked with made-in-the-USA representations. *Id.* ¶¶ 1 n.1, 5. In 2019, Nordic Ware sold more than 72 million bundt pans, which accounted for 20% of the company's business. *Id.* ¶ 3. It also sold 720 million cookie sheets. *Id.* Plaintiffs do not say how much of Nordic Ware's business consists of aluminum bakeware sales. Nordic Ware's sales increased "around 400%" in 2020, during the COVID-19 pandemic. *Id.* ¶ 4. However, Plaintiffs do not say whether the years 2019 and 2020 fall under the relevant statutes of limitations. The only limitations periods described in the Amended Complaint are for the California claims, which range from three to four years. *Id.* ¶ 45. Plaintiffs also do not expressly state that Nordic Ware's sales in 2021 through 2025 track their numbers in 2019 and 2020, though they allege that Nordic Ware is "one of the leading market players in the 3.84 billion dollar bakeware industry," so it's reasonable to infer that the recent sales

figures are not drastically lower. *Id.* ¶ 3. Accounting for a 10% price premium, *id.* ¶ 8, and that Thayer's bundt pan sold for $36, *id.* ¶ 12, it would be conservative to estimate a $2-per-item price-premium injury. If within the statute of limitations Nordic Ware sold anything close to 72 million bundt pans, the $5 million amount-in-controversy is easily met. Same with number of class members—it is plausible to infer from the high volume of sales that there are more than 100 members in the class. *See id.* ¶ 54 ("[T]here are thousands of members in the Class and Subclasses.").[3]

### III

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[3]    Nordic Ware challenges Thayer's standing, but accepting this contention would violate the governing Rule 12(b)(6) standards. Nordic Ware argues Thayer has no standing because she failed to adequately allege the two bundt pans she purchased were like the other products referenced in the Amended Complaint. ECF No. 25 at 24. According to Nordic Ware, the "*Bundt®* pans were <u>cast</u> in the United States from <u>molten aluminum alloy</u>, where the aluminum alloy <u>ingots</u> used contained 100% <u>domestically recycled</u> aluminum. That is different from those products (*e.g.*, baking sheets) manufactured from alloyed <u>aluminum coil</u>." ECF No. 38 at 11–12. However, accepting Plaintiffs' contentions as true, the bauxite in all the Products is foreign. *See* Am. Compl. ¶ 39. Nordic Ware's factual claims contradict the Amended Complaint and cannot be accepted in this posture.

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Plaintiffs bring an action for fraud, they must meet the heightened pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To satisfy Rule 9(b), "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *see Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1013 (8th Cir. 2015). "The claim must identify who, what, where, when, and how." *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). While Rule 9(b) requires particularity in pleading, "a complaint need not be filled with precise detail." *Moua v. Jani-King of Minn., Inc.*, 613 F. Supp. 2d 1103, 1110 (D. Minn. 2009). Rather, "Rule 9(b) is to be read in the context of the general principles of the Federal Rules, the purpose of which is to simplify pleading. Thus, the particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888. In other words, "[t]he level of particularity required depends on the nature of a case." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012).

9

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), but not when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). "In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* (citation modified). Courts "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (citation modified); *see Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,]' without converting the motion into one for summary judgment." (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004))).

A

Nordic Ware argues that Plaintiffs—citizens of New York and California who saw the USA representations in their home states—lack standing to bring Counts I and II, the claims under the Minnesota Prevention of Consumer Fraud Act ("MCFA") and the Minnesota False Statement in Advertising Act ("MFSAA"). ECF No. 25 at 14–15.

The parties refer to this as Article III standing, but that's a category error. There is no question that Plaintiffs' injuries, incurred outside Minnesota, are concrete, particularized, actual, traceable to the defendant's challenged conduct, and redressable by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Instead, the fundamental questions are whether Minnesota law may be constitutionally applied to Nordic Ware, and whether Plaintiffs may recover under Minnesota consumer protection statutes when Plaintiffs' purchases occurred in other states.

For a state's law to be applied consistent with due process, the state must have a "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981). "When considering fairness in this context, an important element is the expectation of the parties." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 822 (1985). That a defendant company was "at all times present and doing business in Minnesota" is one such contact supporting application of Minnesota law. *Allstate*, 449 U.S. at 317. The mere fact that a defendant is headquartered in Minnesota "is not enough" to apply Minnesota law, though manufacturing products in Minnesota "supports [the defendant's] expectation that the MCFA would apply." *Johannessohn*, 450 F. Supp. 3d at 962–63; *see In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119–21 (8th Cir. 2005).

Plaintiffs have met their burden to show Minnesota's law may constitutionally be applied. Nordic Ware is a Minnesota corporation with its principal place of business in Minnesota. Am. Compl. ¶ 14. It "manufactures, labels, advertises, markets and sells aluminum bakeware . . . all directed from Minnesota." *Id.* ¶ 2. These facts, taken as true,

establish at this stage of litigation that Nordic Ware expected Minnesota law to govern its conduct.

The next question is whether the Minnesota statutes apply to the conduct at issue, and there is persuasive authority on both sides.   There is a presumption against extraterritorial application.  *See Arnold v. Cargill, Inc.*, No. 01-cv-2086 (DWF/AJB), 2002 WL 1576141, at *2 (D. Minn. July 15, 2002) (citing *In re Pratt*, 18 N.W.2d 147, 153 (Minn. 1945)).  Along these lines, the court in *Johannessohn* determined that the MCFA—which lacked express language indicating extraterritorial application—could "be applied only to conduct that occurred in Minnesota." 450 F. Supp. 3d at 962; *see Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1157 (D. Minn. 2023) (applying presumption against extraterritoriality to bar MCFA and MFSAA claims for injuries incurred outside Minnesota); *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1233 (D. Kan. 2015) (declining to apply the MCFA to non-Minnesota plaintiffs who "have not alleged that any of [the alleged false] statements were made in or distributed from Minnesota"). Some courts frame this in terms of standing, concluding that "[n]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *Rouse*, 694 F. Supp. 3d at 1156 (quoting *Ferrari v. Best Buy Co.*, No. 14-cv-2956 (MJD/FLN), 2015 WL 2242128, at *9 (D. Minn. May 12, 2015)); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. 13-cv-2664 (ADM/SER), 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014).

By contrast, other courts in this District and elsewhere have found that out-of-state plaintiffs may bring claims under the MCFA.  One court found that the statute "is intended

to apply both to the conduct of foreign corporations that injures Minnesota residents and to the conduct of Minnesota companies that injures non-residents." *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Pracs. Litig.*, No. 99-MD-1309 (PAM/JGL), 2004 WL 909741, at *6 (D. Minn. Apr. 28, 2004); *see Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1009, 1016–19 (D. Minn. 2012) (applying MCFA to non-Minnesota plaintiffs without discussing extra-territoriality). In *Carroll v. Walden University, LLC*, the court found that while the MCFA was "silent on extra-territorial application," non-Minnesota plaintiffs could bring claims under those statutes where the alleged misrepresentations "emanated from decisions made at [the defendant's] headquarters in Minneapolis," and there were contacts between the plaintiffs and the defendant university. 650 F. Supp. 3d 342, 368–69 (D. Md. 2022).

Here, the better answer is that Plaintiffs may seek relief under the Minnesota statutes because the MCFA and MFSAA govern conduct in Minnesota, and Plaintiffs have alleged that Nordic Ware's Minnesota-based conduct caused them an injury. Under Minnesota law, "[t]he object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16. Legislative intent is determined "primarily from the language of the statute itself." *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010) (quoting *Gleason v. Geary*, 8 N.W.2d 808, 816 (1943) (Peterson, J., dissenting)). The MFSAA makes it illegal for "[a]ny person, firm, corporation, or association who, with intent to sell . . . merchandise . . . to the public" to "make[], publish[], disseminate[] . . . *in this state*, . . . an advertisement of any sort regarding merchandise, . . . contain[ing] any material assertion, representation, or statement of fact which is untrue,

deceptive, or misleading."  Minn. Stat. § 325F.67 (emphasis added).  The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."  Minn. Stat. § 325F.69, subdiv. 1.  "These statutes are generally very broadly construed to enhance consumer protection."  *State ex rel. Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 496 (Minn. 1996).

Courts have distinguished between Minnesota conduct causing injury in another state and conduct outside Minnesota entirely, and Plaintiffs allege the former.  *See In re Syngenta*, 131 F. Supp. 3d at 1233 ("[P]laintiffs have identified in their complaints five particular sources of misrepresentations and misleading statements by Syngenta, but they have not alleged that any of those statements were made in or distributed from Minnesota.").  As one court explained, "[b]y allowing 'any person' to sue under the [MCFA], the Minnesota legislature has evinced a strong policy of providing redress for fraudulent business practices that occur within Minnesota's borders, regardless of where a consumer's injury occurs."  *Mooney v. Allianz Life Ins. Co. of N. Am.*, 244 F.R.D. 531, 537 (D. Minn. 2007).  True, the statutes contain no explicit language indicating they govern conduct outside Minnesota.  *See Johannessohn*, 450 F. Supp. 3d at 962 ("Given the presumption against the extraterritorial application of Minnesota statutes and the lack of any statutory language allowing such an application, the Court concludes that the MCFA may be applied only to conduct that occurred in Minnesota.").  But they govern Nordic Ware's conduct in Minnesota, and Plaintiffs allege that Nordic Ware "manufactures, labels,

advertises, markets and sells aluminum bakeware under its 'Nordic Ware' label, all directed from Minnesota." Am. Compl. ¶ 2. While light on details, that allegation is sufficient to state that the misleading representations "emanated" from Minnesota, and so those statements are Minnesota-based conduct that the MCFA and MFSAA govern. *See Carroll*, 650 F. Supp. 3d at 368–69; *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1326–27 (D. Minn. 2018) (dismissing an MFSAA claim because plaintiff "fail[ed] to allege that the false statement occurred in Minnesota").

### B

Nordic Ware challenges Plaintiffs' MCFA claims on their merits. The MCFA prohibits "[t]he act, use, or employment by any person of any fraud, unfair or unconscionable practice, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subdiv. 1. Minnesota's Private Attorney General Statute allows "any person injured by a violation of [the MCFA to] bring a civil action and recover damages," along with costs, attorney's fees, and equitable relief. Minn. Stat. § 8.31, subdiv. 3a. "To be actionable under the MCFA, a statement must be literally false, or true but likely to mislead 'a large segment of its audience.'" *Ford Motor Credit Co. v. Majors*, No. A04-1468, 2005 WL 1021551, at *4 (Minn. Ct. App. May 3, 2005) (quoting *Ott v. Target Corp.*, 153 F. Supp. 2d 1055, 1069 (D. Minn. 2001)). "In order to be deemed literally false the statement must be a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'"

15

*Ott*, 153 F. Supp. 2d at 1069 (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 496 (5th Cir. 2000)).  Minnesota courts have evaluated claims under the MCFA the same way they analyze Lanham Act claims.  *See LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1487–88 (D. Minn. 1996).  "To state [an MCFA] claim, 'the plaintiff need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby.'"  *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (quoting *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001)).  "Moreover, '[a]llegations that the plaintiff relied on the defendant's conduct are not required to plead a violation.'"  *Id*.  However, a plaintiff must plausibly assert a "causal nexus" between the plaintiff's injuries and the defendant's wrongful conduct.  *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 811–12 (Minn. 2004).

Though courts have answered the question differently, the most persuasive authority holds that "Made in USA" is ambiguous and therefore cannot be literally false.  *See Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 986 (D. Minn. 2014).  A claim cannot be literally false where it "can reasonably be understood as conveying different messages."  *Id.* (citing *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1186 (8th Cir. 2011) (analyzing the Lanham Act)).  "Made in America" and its equivalents can reasonably be understood to mean different things.  As the Tenth Circuit explained, "the term *make* could refer either to the origin of the components or to the assembly of the product itself."  *I Dig Tex., LLC v. Creager*, 98 F.4th 998, 1010 (10th Cir. 2024).  In this District, Judge Joan N. Ericksen found the same ambiguity, noting that the FTC guidance "recognize[d] that the propriety of a 'Made in the USA' claim w[ould] be product and context specific,

16

beyond the threshold consideration of whether final assembly or processing occurs in the country." *Honeywell Int'l*, 45 F. Supp. 3d at 988.

Plaintiffs point to cases reaching the opposite conclusion, but these are less convincing. One court concluded without further analysis that "All Albion products are Made in America" was untrue where some Albion products were produced partially or entirely in Taiwan. *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 346 (D.N.J. 2020). Ambiguous or not, a "Made in USA" claim is false as to an item produced entirely in a different country. Another cited authority relied on FTC guidance that "all or virtually all" of a product's parts and labor must come from or occur in the United States. *Master Lock Co. v. Hampton Prods. Int'l Corp.*, No. 96-C-213, 1996 WL 35063605, at *3–4 (E.D. Wis. Dec. 2, 1996). But as Judge Ericksen explained, *Master Lock* does not address whether the statement "Made in the USA" was ambiguous. *Honeywell Int'l*, 45 F. Supp. 3d at 987. More importantly, a "Lanham Act plaintiff must show that the advertisements are literally false or misleading to the public, not merely that the advertisements violate FTC guidelines." *Id.* (quoting *Millennium Imp. Co. v. Sidney Frank Importing Co.*, No. 03-cv-5145 (JRT/FLN), 2004 WL 1447915, at *6 (D. Minn. June 11, 2004)). Applying that standard here, I find Plaintiffs' argument that the USA Representations are literally false to be unpersuasive.

Plaintiffs' reliance on two sets of FTC materials doesn't change this conclusion. The first is the Labeling Rule, adopted in 2021, which states:

> In connection with promoting or offering for sale any good or service, in or affecting commerce as "commerce" is defined in section 4 of the Federal Trade Commission Act, 15 U.S.C. 44,

> it is an unfair or deceptive act or practice within the meaning of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. 45(a)(1), to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2. The second is a guidance document that lays out "the FTC staff's view of the [Labeling Rule's] requirements" and "is not binding on the Commission." *Complying with the Made in USA Standard*, FTC, https://www.ftc.gov/business-guidance/resources/complying-made-usa-standard (last visited Dec. 29, 2025). I don't understand these to be relevant. The Labeling Rule may "not be construed as superseding, altering, or affecting any other State statute, regulation, order, or interpretation relating to country-of-origin labeling requirements, except to the extent that such statute, regulation, order, or interpretation is inconsistent with the provisions of this part, and then only to the extent of the inconsistency." 16 C.F.R. § 323.5(a). And, as noted, the guidance document isn't binding on the Commission, making it difficult to understand how it might be controlling here.

The next issue is whether the USA Representations are likely to mislead a large segment of their audience. *Majors*, 2005 WL 1021551, at *4. When evaluating MCFA pleadings, courts in this District have asked if a plaintiff plausibly alleges a defendant's affirmative representations or material omissions could deceive a reasonable consumer. *Song v. Champion Petfoods USA, Inc.*, No. 18-cv-3205 (PJS/KMM), 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022); *see also Barclay v.*

*Icon Health & Fitness, Inc.,* No. 19-cv-2970 (ECT/DTS), 2022 WL 486999, at *5 (D. Minn. Feb. 17, 2022) (citing cases applying an ordinary-person or reasonable-person standard to a seller's representations); *In re Gen. Mills Glyphosate Litig.*, No. 16-cv-2869 (MJD/BRT), 2017 WL 2983877, at *6 (D. Minn. July 12, 2017). Whether a particular representation is misleading is often a fact question determined at a stage later than a motion to dismiss. *Song*, 2020 WL 7624861 at *4. However, "[w]here allegations of fraud or deception are premised on an implausible interpretation of a packaging statement, dismissal is warranted." *Id*.

Plaintiffs assert that "reasonable and ordinary consumers interpret the USA Representations to mean that all parts of a product, including any natural resources it contains, originated in the United States." Am. Compl. ¶ 30. While Nordic Ware argues this is a "formulaic recitation" of the claim's elements, which cannot withstand the Federal Rules' pleading standards, ECF No. 25 at 9, Plaintiffs have alleged a plausible interpretation. When courts identify implausible interpretations, they rely on common sense, not additional facts about reasonableness. *See Glyphostate*, 2017 WL 2983877, at *6 (collecting cases). For example, reasonable observers would not think that "Drumstick ice cream novelty was born [in 1928]" meant the manufacturer's recipes and ingredients were the same in 2011. *See Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380, at *5 (N.D. Cal. Jan. 10, 2011), *abrogated on other grounds by*, *Hawkins v. Kroger Co.*, 906 F.3d 763, 771 n.7 (9th Cir. 2018). Similarly, no reasonable consumer would believe that "Froot Loops" cereal contained actual fruit. *Videtto v. Kellogg USA*, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *3 (E.D. Cal. May

21, 2009).  Here, common sense is not so decisive.  A reasonable consumer could believe that "Made in USA" included the source of bauxite mining and the aluminum's refining, and Plaintiffs have plausibly alleged that.  *See Shirley v. Reynolds Consumer Prods., LLC*, 636 F. Supp. 3d 907, 915 (N.D. Ill. 2022) (finding plaintiff plausibly alleged defendant's intent to deceive by advertising aluminum products as "Made in USA" despite knowing that the aluminum came from foreign-sourced bauxite).

That leaves the issues of injury, the "causal nexus" between the defendant's conduct and the plaintiff's injury, and the Rule 9(b) pleading standards.  All are easily met. Plaintiffs allege not only that consumers are "willing" to pay a 10% premium on goods made entirely in America, but also that Plaintiffs paid such a premium.  Am. Compl. ¶¶ 8, 11–12.  Minnesota law recognizes this economic injury.  *See Barclay*, 2022 WL 486999, at *2 n.3.  Plaintiffs' alleged causal theory is straightforward: because Nordic Ware used the USA Representations in advertising the Products, and Plaintiffs relied on those representations, they overpaid for their bakeware.  *See* Am. Compl. ¶¶ 11–12.  Lastly, Plaintiffs have adequately put Nordic Ware on notice of the who, what, when, where, and how of the alleged fraud, and Nordic Ware does not argue otherwise.  So Plaintiffs have plausibly alleged violations of the MCFA.

## C

The MFSAA prohibits a corporation from making or publishing "in this state . . . an advertisement of any sort regarding merchandise" that "contains any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading."  Minn. Stat. § 325F.67; *see Khoday*, 858 F. Supp. 2d at 1016.

Plaintiffs have plausibly alleged a violation of the MFSAA.  Nordic Ware made and published representations on and next to their aluminum bakeware stating that the products were "Made in the USA" or an equivalent.  Am. Compl. ¶¶ 5–7.  There is no dispute the statements are plausibly material—they assert a fact about the product salient to many purchasers.  And as explained above, they are plausibly misleading when the aluminum's source material comes from another country.

Nordic Ware argues Plaintiffs failed to show that the action benefits the public.  ECF No. 25 at 13 (citing *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1142 (D. Minn. 2016)).  This requirement applies to actions brought under Minnesota's Private Attorney General statute.  *See In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1076 (D. Minn. 2010); Minn. Stat. § 8.31, subdiv. 3a.  To determine whether the action benefits the public, courts consider "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged representation; the kind of relief sought; and whether the alleged misrepresentations are ongoing."  *Khoday*, 858 F. Supp. 2d at 1017.  Courts also consider whether the defendants made misrepresentations to the "public at large." *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 330 (Minn. 2003); *see Barclay*, 2022 WL 486999, at *13 (finding the "public at large" factor to outweigh other considerations).

Here, while the factors are not all aligned, Plaintiffs have alleged facts plausibly showing a public benefit.  Nordic Ware is a leading seller of aluminum bakeware, selling annually hundreds of millions of products.  Am. Compl. ¶ 3.  The misrepresentations were featured on or next to many different items.  *Id.* ¶¶ 5–7.  These factors favor a public benefit.  The other factors push the other direction: Plaintiffs seek damages and declaratory

21

relief,[4] *id.* at 39, and Nordic Ware "began to revise its online labeling and marketing" in March 2025, but hasn't changed the labeling and marketing for in-store products, *id.* ¶ 35. Following *Collins* and *Barclay*, these considerations do not outweigh the misleading representations' effect on the public at large. So Plaintiffs have plausibly alleged a public benefit, and their MFSAA claims will survive the motion to dismiss.

## D

A New York statute makes it unlawful to commit "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in this state." N.Y. Gen. Bus. Law § 349. "To maintain a cause of action under Section 349, a plaintiff must show: (1) that the defendant's conduct is consumer-oriented; (2) that the defendant is engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." *Heskiaoff v. Sling Media, Inc.*, 719 F. App'x 28, 31 (2d Cir. 2017) (citation modified). Another statute prohibits "[f]alse advertising in the conduct of any business, trade or commerce . . . in this state." N.Y. Gen. Bus. Law § 350. Under this statute, "a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (citation modified). Plaintiffs must also plead reliance to successfully bring section 350 claims. *Id.* at 288. For both section 349 and section 350, "Plaintiff must show that Defendant's actions would materially mislead a reasonable consumer." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 526 (S.D.N.Y. 2009).

---

[4] Plaintiffs seek injunctive relief under a California statute, but not under the MCFA or MFSAA. *See* Am. Compl. ¶¶ 48–49.

Nordic Ware argues that Kaufmann (the New York Plaintiff) failed to plausibly allege a material misrepresentation and causation. ECF No. 25 at 16–17. For the reasons already explained, Plaintiffs have plausibly alleged the USA Representations were materially misleading. Nordic Ware argues that "Kaufmann did not adequately allege that he actually paid a higher price for Nordic Ware's products based on the 'Made in America' label, and he could not have purchased a comparable product made from aluminum that originates from bauxite mined within the United States for any price." *Id.* at 17. This confuses the issue. Kaufmann needed to show that he paid a price premium for the aluminum pans in reliance on the "Made in USA" claim. He did that. Am. Compl. ¶ 11. The law doesn't require him to show that he could have purchased a similar product that used American-mined bauxite.

Nordic Ware also argues that Kaufmann's claim fails because the "most significant contentions" are made not on personal knowledge but on information and belief. ECF No. 25 at 18; *see* Am. Compl. at 1 ("Plaintiffs . . . makes [sic] the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel . . . ."). "Allegations pleaded on information and belief usually do not meet Rule 9(b)'s particularity requirement." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009). Nordic Ware's cited New York authorities make the same point regarding violations of sections 349 and 350—plaintiffs must plead enough facts "to support the contention that the alleged deceptive act or practice plausibly could have occurred." *Woods v. Maytag Co.*,

23

No. 10-CV-0559 (ADS) (WDW), 2010 WL 4314313, at *15 (E.D.N.Y. Nov. 2, 2010); *see Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993).

Regardless, this contention misconstrues Plaintiffs' allegations. They are made "pursuant to the investigation of [Plaintiffs'] counsel and based upon information and belief." Am. Compl. at 1. The only allegation specifically made "upon information and belief" is the estimate of class members. *Id.* ¶ 54. That goes to the Rule 23(a)(1) numerosity requirement, not an element of the New York statutory causes of action. The remaining allegations are sufficiently specific to make it plausible that Nordic Ware violated sections 349 and 350.

E

Nordic Ware seeks to dismiss all of Plaintiffs' California claims, most of which are brought solely by Thayer on behalf of the putative California subclass.[5] Specifically, Plaintiffs allege (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising ("FAL"); and (3) violation of California's Unfair Competition Act ("UCL"). Am. Compl. ¶¶ 101–35. Plaintiffs also allege unjust enrichment on behalf of the California subclass. *Id.* ¶¶ 144–50. Nordic Ware raises a threshold issue: whether California's Safe Harbor Doctrine bars all those claims. ECF No. 25 at 20–21.

---

[5]    Nordic Ware addresses the California subclasses' claims for breach of express warranty, unjust enrichment, and fraud in this section, so it discusses "six purported California causes of action." ECF No. 25 at 18. The claims for breach of express warranty and fraud are also brought on behalf of other and wider classes.

1

Under the safe harbor doctrine, "[i]f the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 541 (Cal. 1999).

In Nordic Ware's view, if the safe harbor doctrine applies, *all* of Thayer's claims in California (UCL, CLRA, FAL) and the putative California class's common-law claims would be barred. ECF No. 25 at 20. Many California federal courts have taken this position at least regarding the UCL, CLRA, FAL, and unjust enrichment. *Alvarez v. Chevron Corp.*, 656 F.3d 925, 933–34 (9th Cir. 2011) (applying safe harbor to UCL and CLRA claims); *Pom Wonderful LLC v. Coca Cola Co.*, No. CV 08–06237 SJO (FMOx), 2013 WL 543361, at *5 (C.D. Cal. Feb. 13, 2013) (UCL and FAL); *Flodin v. Cent. Garden & Pet Co.*, No. 21-cv-01631-JST, 2023 WL 3607278, at *2 (N.D. Cal. Mar. 9, 2023) (CLRA, UCL, FAL, and unjust enrichment). Thayer does not dispute the point. *See* ECF No. 36 at 21–24.

The California legislature considered a situation like the one here in enacting a "Made in the USA" statute.[6] Under this statute,

---

[6]    Plaintiffs do not assert a claim under California's Made-in-the-USA Statute, but the safe harbor doctrine still nonetheless applies. *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 962–64 (9th Cir. 2016) (finding defendant's conduct not actionable under the UCL, CLRA, and FAL because a California labeling statute created a safe harbor, despite plaintiffs not asserting a cause of action under the labeling statute).

> [I]t is unlawful for any person, firm, corporation, or association to sell or offer for sale in this state any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words if the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

Cal. Bus. & Prof. Code § 17533.7(a).  The statute contains an exception where "all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product."  Cal. Bus. & Prof. Code § 17533.7(b).  Another exception is where the "manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source," and if "[a]ll of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 10 percent of the final wholesale value of the manufactured product."  Cal. Bus. & Prof. Code § 17533.7(c).  Additionally, at least one California court has determined that "made, manufactured, or produced" refers to the process of turning raw materials into new forms, so "one would not violate the statute by making, manufacturing, or producing merchandise solely in the United States even though using raw materials acquired from a foreign source."  *Benson v. Kwikset Corp.*, 62 Cal. Rptr. 3d 284, 296–97 (Cal. Ct. App. 2007).

A plaintiff bringing a "Made in USA" fraud claim under California statutes must allege facts plausibly showing that the misrepresentations fall outside the exceptions in section 17533.7(b) and (c).  *See Hood v. Handi-Foil Corp.*, No. 24-cv-02373-RS, 2024 WL 4008711, at *3 (N.D. Cal. Aug. 29, 2024).  In *Hood*, the plaintiffs offered no facts about

(1) the cost of the bauxite, (2) the price of the defendants' products, (3) the defendants' manufacturing processes, (4) the source of the bauxite used in the defendants' products, and (5) the amount of bauxite composing defendants' products. *Id.* at *2. So the court concluded that the plaintiff's "complaint consists of no factual averments to suggest that Defendants' products fall outside of Section 17533.7(c)(1)'s safe harbors," and it held the plaintiff did not meet her Rule 9(b) burden. *Id.*

Here, Plaintiffs have plausibly alleged "all, or virtually all[,] of the aluminum and bauxite used to make the Products is obtained outside the United States, and all of the transformation of bauxite into alumina and the transformation of alumina into aluminum occurred in Canada." Am. Compl. ¶ 9. "[N]one of the bauxite mined in the U.S. has been used for aluminum since approximately 1981," Am. Compl. ¶ 39, making it "virtually impossible to source U.S.-mined bauxite . . . in the United States," *id.* ¶ 42. Although Plaintiffs do not allege the amount of bauxite used in the Products, they do allege that aluminum is the "primary" and "fundamental" component. *Id.* ¶¶ 34, 36. The "Naturals Baker's Half Sheet Pan" is "made of pure aluminum." *Id.* ¶ 7. The Amended Complaint alleges the bundt pans are aluminum as well. *See id.* (including the bundt pans in "the products"); *id.* ¶ 1 n.1 ("The Products include all aluminum bakeware sold by Defendant that is labeled, packaged, or marketed with claims that the products are 'made in the USA,' 'Made in America,' or 'American Made.'").[7] Plaintiffs also allege facts about Nordic

---

[7]    Nordic Ware objects to this allegation, claiming the statements attributed to its CEO are false and "without any cited support." ECF No. 25 at 19 n.7. It also argues that "[n]ot only does Nordic Ware source its coiled aluminum domestically, the two Bundt® pans allegedly purchased by Thayer . . . are <u>not</u> made from coiled aluminum. They are <u>cast in</u>

Ware's manufacturing process.   Namely, Plaintiffs claim Nordic Ware's CEO "has admitted the primary component used to manufacture the Products is aluminum sourced in the form of 5,000 pound coils imported from Canada." *Id.* ¶ 34.  Unlike in *Hood*, Plaintiffs allege facts about the Products' prices.  *Id.* ¶¶ 11–12.

These facts make it plausible that the Products fall within section 17533.7(a) and outside the section 17533.7(b) and (c) exceptions.  Plaintiffs allege that the bauxite is transformed into alumina in Canada; had they alleged merely that the bauxite was sourced internationally, *Benson* would have barred the California claims.  *See* 62 Cal. Rptr. 3d at 296–97.  The allegations also make it plausible that foreign-sourced aluminum constitutes more than 10 percent of the final wholesale value because the bakeware's "primary" and "fundamental" component is aluminum.   The California claims are not barred by the safe-harbor doctrine.

2

The remaining arguments over the California claims do not justify dismissal.  The California Consumer Legal Remedies Act ("CLRA") prohibits "unfair methods of competition," including "[u]sing deceptive representations or designations of geographic origin in connection with goods."   Cal. Civ. Code § 1770(a)(4).   Plaintiffs must demonstrate injury from the alleged unlawful practice.  *Meyer v. Sprint Spectrum L.P.*,

---

the United States using domestically recycled and alloyed aluminum. . . . [T]he pleading has apparently violated FRCP 11." *Id.*  In a Rule 12(b)(6) posture, Plaintiffs' well-pleaded factual allegations are accepted as true, so the assertion that the pans were made from domestically-recycled and alloyed cast aluminum cannot be credited at this stage. Determining whether this factual contention has evidentiary support will have to wait for later.

200 P.3d 295, 298 (Cal. 2009). As explained earlier, Thayer has plausibly alleged that she overpaid for her bundt pans because she relied on the "Made in USA" representations, and that she would not have bought the bundt pans if she had known the USA Representations were false. Am. Compl. ¶ 12. That is enough to state a claim under the CLRA. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018).

The California False Advertising Law ("FAL") makes it unlawful for a corporation to disseminate untrue or misleading statements in advertising goods for sale. Cal. Civ. Code § 17500. Whether a statement is misleading is determined by the reasonable-consumer standard. *Salazar v. Target Corp.*, 299 Cal. Rptr. 3d 616, 622 (Cal. Ct. App. 2022). As explained above, Plaintiffs have plausibly alleged that the USA Representations would deceive a reasonable consumer. The FAL claim survives the motion to dismiss as well.

The California Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Civ. Code § 17200. Acts prohibited under the FAL are included in this prohibition. *Id.* Since Thayer has pleaded a plausible violation of the FAL, her UCL claim survives as well.

Thayer seeks "all available relief under the UCL," Am. Compl. ¶ 135, which includes equitable relief, *see J.J. v. Ashlynn Mktg. Grp., Inc.*, No. 24-cv-00311-GPC-MSB, 2025 WL 1811854, at *16 (S.D. Cal. July 1, 2025). Equitable restitution is available under the UCL only where a plaintiff alleges "they lack an adequate remedy at law." *J.J.*, 2025 WL 1811854, at *16. A plaintiff "satisfies this requirement by alleging that available

legal remedies 'are inadequate because they are not equally prompt, certain, or efficient as equitable relief.'" *Timmins v. Unilever U.S., Inc.*, 785 F. Supp. 3d 774, 784 (E.D. Cal. June 4, 2025).    Thayer has done so here.  *See* Am. Compl. ¶ 46.  The UCL claim for equitable relief also survives the motion to dismiss, and the unjust enrichment claim survives for the same reason.[8]

F

1

Plaintiffs bring breach of express warranty on behalf of the nationwide class and all subclasses.  The parties believe that each putative class member's home state's law will apply to these claims.  ECF No. 25 at 26–28; ECF No. 36 at 32–34.  Under a Minnesota choice-of-law analysis, that's a sensible conclusion if the state laws are in conflict, and no one state's laws can be applied to all putative class members consistent with due process.  *See Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469–70 (Minn. 1994) (explaining Minnesota choice-of-law analysis).

Nordic Ware sets out two reasons to dismiss the breach of warranty claims.  First, they argue Plaintiffs "lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  ECF No. 25 at 25 (quoting *Rouse v. H.B. Fuller Co.*, 694 F. Supp. 3d 1149, 1156 (D. Minn. 2023)).  But Kaufmann and

---

[8]    While "there is no cause of action in California labeled unjust enrichment," *Sepanossian v. Nat'l Ready Mixed Concrete Co.*, 315 Cal. Rptr. 3d 373, 385 (Cal. Ct. App. 2023) (citation modified), California courts analyze unjust enrichment "claims" as requests for restitution, a form of equitable relief, *see Hirsch v. Bank of Am.*, 132 Cal. Rptr. 2d 220, 229–30 (Cal. Ct. App. 2003).

30

Thayer aren't bringing claims under, say, Alaska or Wyoming law. They're bringing claims under Minnesota law and their home state law, and they are representing a putative class that includes members from (presumably) Alaska and Wyoming, among others. Nordic Ware's second argument is that some states require plaintiffs to give notice of the alleged breach to the manufacturer, which it reads to mean each putative class member must give notice. ECF No. 25 at 26. But the case law it cites for this proposition comes at the class certification stage. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 625 (S.D. Fla. 2008). In *Cohen*, the court concluded that the statutory notice element was grounds to find that plaintiffs failed to meet Rule 23(b)(3)'s predominance requirement, not to dismiss the named plaintiffs' claims. *Id.*

## 2

Lastly, Plaintiffs bring a common-law fraud claim on behalf of the nationwide class, the New York subclass, and the California subclass. The parties agree that Minnesota law applies, *see* ECF No. 25 at 28; ECF No. 36 at 34–35, though that seems questionable. Assuming the choice-of-law analysis selects Minnesota law, Plaintiffs must establish five elements to state a fraud claim:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Hoyt Props., Inc. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007). Nordic Ware argues that Plaintiffs have failed to plead reliance, damages, and scienter. For the

reasons explained above, reliance and damages have been properly pled.  *See* Am. Compl.

¶¶ 11–12.  Scienter is also plausibly alleged.  "The existence of scienter is a question of

fact."  *Meecorp Cap. Mkts., LLC v. PSC of Two Harbors, LLC*, 776 F.3d 557, 565 (8th Cir.

2015).  Plaintiffs assert that Nordic Ware knows "consumers are willing to pay

approximately a 10 percent premium for an American-made product versus an import,"

and the company "caters to the people that appreciate American-made products."  Am.

Compl. ¶¶ 32–33 (citation modified).  The prominent USA Representations are evidence,

Plaintiffs allege, that

> Defendant's [sic] carefully designed its labels, advertising,
> packaging, and products . . . to perpetuate the false notion that
> the Products are in fact "made in the USA."  Defendant intends
> that ordinary and reasonable consumers viewing the Products
> will read the claim, understand the claim, and rely on the claim
> to make purchasing decisions.

*Id.* ¶ 20.  These factual allegations, taken as true, make it plausible that Nordic Ware acted

with scienter.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings

herein, **IT IS ORDERED THAT** Defendant Nordic Ware, Inc.'s Motion to Dismiss

Plaintiffs Michael Kaufmann and Debbie Thayer's Class Action Complaint [ECF No. 24]

is **DENIED**.


Dated:  December 29, 2025                         s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court